UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SWIFTSHIPS, LLC;** <br> **SWIFTSHIPS SHIPBUILDERS, LLC;** <br> **ICS NETT, INC;** <br> **ICS NETT, LIMITED;** <br> **SWIFT GROUP, LLC;** <br> **SWIFTSHIPS GROUP, INC.;** <br> **BOT, LLC;** <br> **SHEHRAZE SHAH;** <br> **KHURRAM SHAH;** <br> **JEFFREY LELEUX; and** <br> **CALVIN LEFLEUX** <br><br> **Plaintiffs,** <br><br> **VERSUS** <br><br> **SBN V FNBC LLC; and** <br> **SBN INVESTMENT MANAGEMENT, LLC** <br><br> **Defendants.** | CASE NO: _____ <br><br> SECTION: _____ <br><br> DIVISION: _____ |

**VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs hereby submit this *Verified Complaint for Declaratory Judgment and Injunctive Relief* (the "***Complaint***")[1] and state the following in support:

### I. NATURE OF THE CASE

1. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-02, and Rule 57 of the Federal Rules of Civil Procedure, and for injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

---
[1]

2. Plaintiffs seek a judgment declaring their rights and obligations relating to a settlement and forbearance agreement entered between Plaintiffs and Defendants.

## II.  THE PARTIES

3. The "Plaintiffs" are as follows:

   A. SWIFTSHIPS, LLC a Virginia limited liability company with its principal place of business at 1105 Levee Road, Morgan City, LA 70380 ("*Swiftships*");

   B. SWIFTSHIPS SHIPBUILDERS, LLC, a Louisiana limited liability company with is principal place of business at 592 ½ Fairview Dr., Berwick, LA 70342 ("*Shipbuilders*");

   C. ICS NETT, INC., a Virginia corporation with is principal place of business at 1660 International Dr., Floor 7, Mclean, VA 22012 ("*ICS Nett*");

   D. ICS NETT, LIMITED, an Irish company with its principal place of business at 1660 International Dr., Floor 7, Mclean, VA 22012 ("*ICS Limited*");

   E. SWIFT GROUP, LLC, a Louisiana limited liability company with its principal place of business at 1105 Levee Road, Morgan City, LA 70380 ("*Swift Group*");

   F. SWIFTSHIPS GROUP, INC., a Delaware corporation with its principal place of business at 1105 Levee Road, Morgan City, LA 70380 ("*Swiftships Group*");

   G. BOT, LLC, a Louisiana limited liability company with its principal place of business at 1105 Levee Road, Morgan City, LA 70381 ("*BOT*");

   H. SHEHRAZE SHAH, an individual whose principal address is 3851 Aristotle Ct., Suite 401, Fairfax, VA 22030;

   I. KHURRAM SHAH, an individual whose principal address is 44403 Stoney Run Place, Ashburn VA 20148; and

   J. JEFFREY LELEUX, an individual whose principal address is 589 Fairview Drive, Berwick, Louisiana 70342 and

   K. CALVIN LELEUX, an individual whose principal address is 592 ½ Fairview Dr., Berwick, Louisiana 70342.

4. The "Defendants" are as follows:

    A.    SBN V FNBC LLC ("***SBN***"), a Delaware limited liability company, who based on information and belief is a citizen of the State of Colorado by virtue of the membership of its members; and

    B.    SBN INVESTMENT MANAGEMENT, LLC, ("***SIM***," and collectively with SBN, "***Summit*** a Delaware limited liability company, who based on information and belief is a citizen of the State of Colorado by virtue of the membership of its members.

### III. JURISDICTION

5. This Court has subject matter jurisdiction because Plaintiffs seek an injunction to prevent, *inter alia*, foreclosure on a ship subject to a preferred ship mortgage, in addition to a shipyard producing assets for the U.S. military. Thus, Jurisdiction is proper pursuant to the Ship Mortgages Act, 46 U.S.C. § 31301, *et seq.* and 28 U.S.C. § 1333.

6. Additionally, Plaintiffs assert this Court also has original subject matter jurisdiction based on 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and on information and belief, this cause is between citizens of different states. To the extent complete diversity is contested by Defendants, limited discovery should be allowed so as to determine citizenship.

7. This Court has personal jurisdiction over all parties named herein pursuant to contractual stipulation made in the Forbearance and Settlement Agreement.

### IV. VENUE

8. Venue is proper in this Court pursuant to a contractual stipulation within the Forbearance and Settlement Agreement requiring any action between the parties relating to the issues set forth in this Petition be brought in this court.

### V. REQUEST FOR DECLARATORY RELIEF

9. Beginning in March of 2017, First NBC Bank of Commerce ("***FNBC***") made a series of loans to Swiftships, Shipbuilders, ICS Nett, BOT, and Shehraze Shah (collectively, the

"*Borrowers*") in an approximate amount of $60 million dollars, to facilitate their continuing operations , with each loan in the series being represented by a promissory note of varying amount, each being executed over the course of a period of years, and certain of which loans were personally guaranteed by Swiftships, Shipbuilders, ICS Nett, ICS Limited, Swiftships Group, BOT, Khurram Shah, Shehraze Shah, Calvin Leleux , and Jeffrey Leleux (the "*Guarantors*").

10. FNBC was closed in April of 2017, and the Federal Deposit Insurance Corporation ("*FDIC*") was named its receiver. Defendant SBN entered into a loan sale agreement in October of 2017 by which it purchased a pool of loans from the FDIC that included the loans FNBC had made to Borrowers.

11. On June 5, 2018, Plaintiffs and SBN executed an instrument entitled "FORBEARANCE AND SETTLEMENT AGREEMENT" ("*FSA*") under the terms of which the parties compromised the claims of SBN to the sum of $13,250,000.00, which Borrowers agreed to pay in installments.

12. On June 20, 2019, the Plaintiffs and SBN executed an instrument entitled "FIRST AMENDMENT TO FORBEARANCE AND SETTLEMENT AGREEMENT" ("*First Amendment to FSA*") by which the forbearance period would be extended.

13. On October 21, 2019, the Plaintiffs and SBN executed an instrument entitled "SECOND AMENDMENT TO FORBEARANCE AND SETTLEMENT AGREEMENT," ("*Second Amendment to FSA*") by which the forbearance period was extended again.

14. On January 17, 2020, Plaintiffs and SBN executed an instrument entitled "THIRD AMENDMENT TO FORBEARANCE AND SETTLEMENT AGREEMENT," ("*Third Amendment to FSA*") under the terms of which Plaintiffs agreed to pay SBN a payment of

$500,000 and thereafter make consecutive payments of $250,000 on the 15th of the month and $250,000 on the last business day of the month through and including September 30, 2020.

15. The Plaintiffs and SBN agreed pursuant to the FSA that the law of the State of Louisiana would govern without regard to conflicts of laws principles.

16. Consistent with the terms of the Third Amendment to FSA, during the period January of 2020 through March 15, 2020, Borrowers paid to SBN the sum of $1.25 million dollars.

17. To date, Borrowers have paid SBN the sum of $11.24 million dollars pursuant to FSA, as amended.

18. Borrowers are military contractors building vessels to serve the vital interests of the United States.

19. Borrowers receive "milestone" payments pursuant to certain military contracts upon inspection of Borrower's work by Army and Navy officers stationed at Borrowers' premises ("***Milestone Payments***").

20. In mid-March 2020, an outbreak of the virus designated Covid-19 became an unprecedented viral pandemic in the United States (the "***Covid-19 Pandemic***").

21. In late March 2020, in response to the Covid-19 Pandemic, the Governor of the State of Louisiana, John Bell Edwards, issued a series of declarations of public health emergency in Proclamation Numbers 25 JBE 2020, 27 JBE 2020, 30 JBE 2020, 33 JBE 2020, and 41 JBE 2020. The President of the United States, Donald Trump, declared a national emergency on March 13, 2020.

22. As a consequence of the Covid-19 Pandemic, and the resulting governmental response, the Army and Navy officers who perform inspections of the Borrowers' work were not

permitted by the United States to remain at Borrowers' premises and were recalled to Washington, D.C.

23. Consequentially, beginning in the early stage of the Covid-19 Pandemic and continuing through the present time, inspections have been halted and Milestone Payments which were expected to fund Borrowers' operations and loan payments to SBN, have not been remitted as anticipated to Borrowers.

24. Borrowers' severe cash flow impairment has made it impossible for Borrowers to continue to make payments to SBN for installments due on March 30, 2020, through the present.

25. In early March of 2020, Borrowers commenced discussions with SBN, advising of its temporary business interruption and requesting that during the Covid-19 Pandemic payments by Borrowers be suspended pursuant to a fourth Forbearance and Settlement Agreement.

26. Plaintiffs were asked to explain the situation via a conference call, which was arranged by Defendants' representative, Michael Furlong, an officer at SBN. In addition to Michael Furlong, there were two to three other representative of Defendants who joined this call conference call to discuss the Plaintiffs' request to suspend payment. One of these persons was Dave Lechner, another officer at SBN.

27. Plaintiffs' representative explained at the conference call that the only way Borrowers could afford the monthly payments to SBN was by revenue generated through completion of milestones on various military contracts and these milestones could not be completed during business interruption caused by the Covid-19 Pandemic.

28. Defendants' representatives expressed understanding of Borrowers' predicament at the conference call and asked if Plaintiffs were requesting the forbearance deadline be continued

with deferment of monthly payments. Plaintiffs' representative responded that only deferment of the payments was being requested.

29.     At the conference, Defendants verbally agreed to a suspension of payments during Borrowers' business interruption.

30.     Defendants knew or should have known the Plaintiffs would rely on such representations.

31.     Plaintiffs reasonably relied upon the representations of the Defendants to their detriment, as more fully set forth herein below.

32.     On April 3, 2020, Plaintiffs confirmed the suspension of payments in an e-mail to Michael Furlong and expressed gratitude for SBN's flexibility and reasonableness in suspending payments during the Covid-19 Pandemic.

33.     SBN did not respond to the April 3, 2020 e-mail.

34.     Borrowers immediately sought a means to continue to make payments to SBN by applying for disaster loan assistance through the Small Business Administration (the "*SBA*").

35.     The disaster loan which Borrowers applied for (the "*SBA Loan*") was approved and would provide Borrowers with a means to pay off the debt to SBN, but SBN has refused release its security interest in Borrowers' property which was to serve as the basis by which the SBA Loan would be adequately secured. As a result, the SBA Loan has not been funded to date.

36.     On April 7, 2020, SBN forwarded to Borrowers a Notice of Default and Reservation of Rights ("*Notice of Default*") signed by Michael Furlong, as representative of Defendant, SBN.

37.     Upon receipt of this Notice of Default, Borrowers immediately contacted SBN to inquire why it had mailed the Notice of Default despite having agreed to suspend Borrowers' payments.

38. Michael Furlong responded to Borrowers' inquiry stating that the Notice of Default was "nothing to worry about," that the Notice of Default was "just routine operating procedure," and that the Borrowers should "disregard it."

39. Meanwhile, Borrowers furnished SBN all the data which was requested in order to restructure the remaining indebtedness which was due or would become due for the period which Borrowers' business was interrupted by the Covid-19 Pandemic.

40. Plaintiffs have offered to pay off the entire balance due to SBN pursuant to the Third Amendment to FSA.

41. Plaintiffs were then informed that SBN would not accept the entire balance due on the debt, but rather, Defendants, through Mr. Furlong, advised that "there is a bigger amount being requested than the amount offered." The amount was not revealed by Mr. Furlong on the call.

42. The Covid-19 Pandemic is unprecedented and is exclusively the consequence of natural causes, extraordinary and overwhelming in nature, and could not have been anticipated by anyone, including Borrowers and the Guarantors. Plaintiffs maintain that the Covid-19 Pandemic and the civil orders issued by the State of Louisiana and the United States constitutes a force majeure or "fortuitous event" which entitles plaintiffs to suspend performance on a temporary basis. See La. Civ. Code art. 1873.

43. The Covid-19 Pandemic has impacted Borrowers' business operations and has rendered it temporarily impossible to perform under the terms of the Third Amendment to FSA while Borrowers' business operations are interrupted.

44. SBN agreed to a suspension of payments during the Covid-19 Pandemic, both explicitly during verbal negotiations and implicitly during conversations and e-mail correspondence between the Borrowers and SBN.

45. Plaintiffs relied to their detriment upon the representations of SBN's authorized representatives, which reliance was reasonable, and upon such reliance Plaintiffs changed their position and were irreparably damaged. *See* La. Civ. Code art. 1967.

46. Louisiana Civil Code article 1983 states a contact between parties contains the implied obligation of good faith. *See* La. Civ. Code art. 1983; *see also* La. Civ. Code. art. 1759 ("Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation."). Defendants have breached the overriding obligation to act in good faith by their actions and/or inactions; therefore, Defendants are in default of the FSA as subsequently amended.

47. SBN should be estopped from any attempt to rescind its agreement to suspend payments during the Covid-19 Pandemic, whether express or implied.

48. Plaintiffs seek a declaratory judgment from this Court declaring the rights and obligations of the parties as it relates to this transaction.

49. Based upon information and belief, SBN intends to foreclose on its preferred ship mortgage against a ship owned by Plaintiffs, the FASTCAN-1 (formerly known as the RISEN SUN), Official No. 1255897, despite the fact that Plaintiffs are not in default of the FSA as amended for the reasons stated above. Plaintiffs specifically seek a declaratory order finding Plaintiffs are not in default of the ship mortgage on the FASTCAN-1 and that Defendants are not entitled to foreclosure on the FASTCAN-1 and other of SBN's collateral. *See* Abstract of Title— FASTCAN-1, Ex. A.

### VI. REQUEST FOR INJUNCTIVE RELIEF

50. Pursuant to Rule 65(B) of the Federal Rules of Civil Procedure and Local Rule 5.2[2], Plaintiffs hereby apply to this court for a preliminary injunction (the "***Preliminary Injunction***")

---

[2] "The attorney filing any pleadings of an extraordinary nature (e.g., temporary restraining orders, vessel seizures, writs of attachment, and other pleadings requiring immediate judicial action) must remain available by telephone to

and all other equitable relief which the Court deems proper and appropriate under the circumstances. Plaintiffs specifically ask that the Preliminary Injunction enjoin SBN from foreclosing on the FASTCAN-1, among other SBN collateral. *See* Abstract of Title—FASTCAN-1, Ex. A.  In support of this application, Plaintiffs state as follows:

51. All the preceding allegations are incorporated into this application as though set forth herein.

52. SBN's attempt to terminate the Third Amendment to FSA and to foreclose on the assets of the Plaintiffs is unfair, opportunistic, unjust, and unconscionable.

53. Borrowers would have means to satisfy the terms of the Third Amendment to FSA, but for SBN's blocking of the SBA Loan. SBN's refusal to accept the payment of the debt owed it will cause immediate and irreparable harm to the Borrowers, which will in turn threaten the national security of the United States.

54. A foreclosure would destroy Borrowers' businesses would make it impossible for Borrowers to fulfill Borrowers' current contracts with the U.S. military, would bar Borrowers from entering into, and fulfilling, future contracts with the U.S. military, and would cause undue hardship on Plaintiffs, Plaintiffs' employees, and further damage regional economies and the ship-building industry.

55. The Plaintiffs do not have an adequate remedy at law. Meanwhile, the Defendants will not suffer any harm from the granting of injunctive relief in comparison to the irreparable harm that plaintiffs will suffer. The public interest militates in granting injunctive relief in favor of the plaintiffs. The harm which would be caused is further made irreparable by the fact that there is no meaningful recourse or remedy at law for recovery of damages because SBN is a special

---

the judge to whom the matter is allotted until the judge reviews the pleadings and determines the appropriate action." L.R. 5.2.

purpose entity, who upon information and belief, has no assets other than its loans to Borrowers, and perhaps other loans, which cannot provide meaningful recovery responsive to a judgment in favor of Plaintiffs. Finally, there is a substantial likelihood Plaintiffs will succeed on the merits.

56. Based upon the foregoing, Plaintiffs seek:

    A. A Preliminary Injunction, that is, an order enjoining SBN from attempting any foreclosure on the assets of Plaintiffs; and

    B. An order expedited discovery from Defendants and third parties, for the purpose of discovering information about Defendant's identities, assets, and/or business activities (the "***Discover Order***").

57. Plaintiffs respectfully urge the Court to advance the trial on the merits and consolidate it with the hearing on the Preliminary Injunction.

**WHEREFORE**, Plaintiffs request that this Court grant all requested relief and any and all other relief the Court deems just and proper under the circumstances.

*Respectfully submitted*,

| | |
|---|---|
| **LUGENBUHL, WHEATON, PECK,**<br>   **RANKIN & HUBBARD** |  */s/* ___Stewart F. Peck_____<br>STEWART F. PECK (LA #10403)<br>601 Poydras Street, Suite 2775<br>New Orleans, LA 70130<br>Telephone: (504) 568-1990<br>Facsimile: (504) 310-9195<br>Email: speck@lawla.com |
| **NICHOLAS F. LAROCCA, JR., (APPC)** | */s/*    *Nicholas F. LoRocca, Jr.*_____<br>NICHOLAS LAROCCA, JR. (LA # 08045)<br>P. O. Box 2466<br>607 Brashear Ave<br>Morgan City, LA 70381<br>Telephone: (985) 385-4800<br>Facsimile: (985) 385-6002<br>Email: nlarocca@laroccalaw.com |

*Attorneys for Plaintiff*