UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Swiftships Shipbuilders, L.L.C., et al.** | CIVIL ACTION |
| VERSUS | NO: 20-1587 |
| **SBN V FNBC LLC, et al.** | SECTION: "T" (4) |

## ORDER

Before the Court is a **Motion to Compel Discovery Responses (R. Doc. 78)** filed by the Plaintiffs seeking to compel the production of all documents related to the Forbearance and Settlement Agreement ("FSA") and internal communications involving the FSA, debt, or any other matter involving Swiftship entities or its guarantors as sought in their duly propounded discovery requests. The motion is opposed. R. Doc. 86. The motion was heard on April 7, 2021 via videoconference. R. Doc. 94.

### I. Background

On June 1, 2020, Plaintiffs filed this action for declaratory judgment pursuant to the Ship Mortgages Act. R. Doc. 1. Plaintiffs own a shipyard that produces assets for the U.S. Military. *Id.*

Beginning in March of 2017, First NBC Bank of Commerce ("FNBC") made a series of loans to Swiftships, Shipbuilders, ICS Nett, BOT, and Shehraze Shah (collectively, the "Borrowers") in an approximate amount of $60 million dollars, to facilitate their continuing operations, with each loan in the series being represented by a promissory note of varying amount, each being executed over the course of a period of years, and certain loans personally guaranteed by Swiftships, Shipbuilders, ICS Nett, ICS Limited, Swiftships Group, BOT, Khurram Shah, Shehraze Shah, Calvin Leleux , and Jeffrey Leleux (the "Guarantors"). *Id.*

In April 2017, FNBC closed and Federal Deposit Insurance Corporation ("FDIC") was named receiver. *Id.* Defendant SBN entered into a loan sale agreement in October of 2017 by which

it purchased a pool of loans from the FDIC that included the loans FNBC had made to Borrowers. *Id.*

On June 5, 2018, Plaintiffs and SBN executed an instrument entitled "Forbearance and Settlement Agreement" under the terms of which the parties compromised the claims of SBN to the sum of $13,250,000.00, which Borrowers agreed to pay in installments. *Id.* Thereafter, on June 20, 2019; October 21, 2019; and January 17, 2020, Plaintiffs and SBN executed three amendments to the FSA. *Id.*

Borrowers are military contractors building vessels to serve the vital interests of the United States. *Id.* Borrowers receive "milestone" payments pursuant to certain military contracts upon inspection of Borrower's work by Army and Navy officers stationed at Borrowers' premises ("Milestone Payments"). *Id.*

In mid-March 2020, an outbreak of the virus designated Covid-19 became an unprecedented viral pandemic in the United States (the "Covid-19 Pandemic"). *Id.* As a consequence of the Covid-19 Pandemic, and the resulting governmental response, the Army and Navy officers who perform inspections of the Borrowers' work were not permitted by the United States to remain at Borrowers' premises and were recalled to Washington, D.C. *Id.* As a result, inspections and resultant Milestone Payments were halted. *Id.*

As such, in early March of 2020, Borrowers commenced discussions with SBN, advising of its temporary business interruption and requesting that during the Covid-19 Pandemic payments by Borrowers be suspended pursuant to a fourth alleged FSA. *Id.* Plaintiffs contend that in light of this predicament that Defendants' representatives, to include Michael Furlong, in a conference call, verbally agreed to suspend payments during the Borrowers' business interruption. *Id.*

On April 3, 2020, Plaintiffs sent an email inquiring whether there would be a suspension of payments to Michael Furlong, the officer at SBN who allegedly agreed to the suspension. *Id.* SBN did not respond to this email, and instead, on April 7, 2020, forwarded to Borrowers a Notice of Default and Reservation of Rights ("Notice of Default") signed by Michael Furlong, as representative of Defendant SBN. *Id.*

When Plaintiffs called to inquire about the Notice of Default Furlong allegedly told Plaintiffs it was "nothing to worry about," that the Notice of Default was "just routine operating procedure," and that the Borrowers should "disregard it." *Id.* Still, when Plaintiffs offered to pay off the entire balance due to SBN pursuant to the Third Amendment to the FSA, SBN rejected the payment and Furlong advised a bigger undisclosed amount was being requested. *Id.*

Plaintiffs contend Furlong's correspondence, and other emails, demonstrate SBN's implicit written agreement to a suspension of payments during the Covid-19 Pandemic. *Id.* Plaintiffs also contend the agreement to suspend payments in verbal conference call conversation was explicit. *Id.* As such, Plaintiffs seek an injunction to prevent, *inter alia*, foreclosure on a ship subject to a preferred ship mortgage, although this claim has since been dismissed as this is not an *in rem* action. *See* R. Docs. 1, 87. Plaintiffs contend that the Covid-19 Pandemic constitutes a force majeure or fortuitous event that entitle Plaintiffs to suspend performance on a temporary basis. *Id.* Plaintiffs also contend that the Covid-19 Pandemic has rendered their ability to perform their obligations under the contract temporarily impossible. *Id.*

The Defendants contend that the Plaintiffs failed to pay the payment that was due on March 31, 2020, under the Third Amendment to the Forbearance Agreement, and unless the Plaintiffs cured the payment default within ten (10) days of the notice, the forbearance would terminate and the full

amount of the indebtedness owed in connection with the Loans would become immediately due and payable. R. Doc. 71-1, p. 4.

Defendants contend any alleged verbal agreement to extend the payment terms or otherwise modify the Forbearance Agreement is unenforceable as a matter of law under the Louisiana Credit Agreement Statute ("LCAS"). R. Doc. 38. In addition, on September 18, 2020, Lender filed its Counterclaim for breach of contract as a result of the Plaintiffs' defaults in connection with the Loans and requesting judgment for amounts owed under the Loans and recognition of Lender's liens, mortgage, deed of trust, and security interests that secure the payment and performance of Plaintiffs' obligations under the Loans. R. Docs. 54-56.

In connection with this motion, Plaintiffs jointly propounded their first set of discovery request as well as a jointly propounding 30(b)(6) document requests. Plaintiffs contend the Defendants' answers are deficient where no internal communications were produced in response. Plaintiffs maintain that internal communications are relevant to the Plaintiffs' claims in this case as such records are likely to contain candid statements from the Defendant acknowledging their suspension of the terms of the Third Amended FSA, which would prove the Plaintiffs were not in default under the agreement and that the Defendants therefore had no basis to exercise in rem remedies against property of the Plaintiffs. R. Doc. 78-1, p. 6. Plaintiffs also claim Defendants base their relevance objection on a misguided interpretation of the Louisiana Credit Agreement Statute (the "LCAS"), which bars actions for damages arising from oral credit agreements. *Id.* As such, Plaintiffs contends the motion to compel should be granted.

Defendants, in opposition, contend that Plaintiffs' request for internal communications is not relevant because Louisiana law is clear that a debtor may not assert a claim or a defense based on the terms of a credit agreement unless that agreement is in writing, expresses consideration, sets

forth the relevant terms and conditions, and is signed by the creditor and the debtor. R. Doc. 86, p. 2 (citing La. Stat. Ann. § 6:1122.1 and La. Stat. Ann. § 6:1123). As such, the Defendants maintain the request for documents is not relevant and the motion to compel should be denied.

On March 31, 2021, the District Court denied Defendant's Motion to Dismiss stating: "[w]hile the complaint and associated briefs debate the applicability of assorted provisions of the Louisiana Civil Code, the complaint specifically pleads that "Plaintiffs seek a declaratory judgment from this Court declaring the rights and obligations of the parties as they relate to this transactions." R. Doc. 87, p. 4. In finding the complaint states a plausible claim for relief, the District Court further noted: "The complaint . . . identif[ies] specific dates and detailed communications allegedly made by a named SBN representative pertaining to the FSA. Defendants deny the existence of such conversations, but the Court is bound to construe the complaint in the light most favorable to the Plaintiffs." R. Doc. 87, p. 3.

**II.     Standard of Review**

Discovery of documents, electronically stored information, and things is governed by Federal Rule of Civil Procedure ("Rule") 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Rule 34 allows a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 34(a).

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (iv) a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). An "evasive or incomplete" answer or production is treated the same as a complete failure to answer or produce. Fed. R. Civ. P. 37(a)(4).

In addition to alleging that the responding party has failed to properly cooperate with discovery, a motion to compel under Rule 37(a) must also "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

### III. Analysis

In determining the relevance of the discovery requests, the Court first turns to Louisiana law governing credit agreements.

Agreements to forebear on the repayment of money are "credit agreements." La. R.S. § 6:1121(1) (" 'Credit agreement' means an agreement to lend or forebear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation"); *see also Knight v. Magee*, 835 So.2d 636 (La.App. 1st Cir.2002). Louisiana statutory law provides "[i]n an action by a creditor, the debtor shall not assert a defense based on the terms and conditions of a credit agreement, unless the agreement is in writing, expresses conditions, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.." La. Stat. Ann. § 6:1122.1

Next, the Court notes "in 2015, the Federal Rule of Civil Procedure 26 was amended to reflect "[i]nformation is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim

or defense . . . " *Woodward v. Lopinto*, No. CV 18-4236, 2020 WL 3960396, at *5 (Roby, M.J.) (E.D. La. July 13, 2020) (citing 2015 Amendment, Comment to Fed. R. Civ. Pro. 26). This current standard of discoverability is more limited to direct relevance as opposed to the previous version of Rule 26 that stipulated information is relevant if it is "likely to lead to the discovery of relevant evidence." *Id.* (citing *Rivera v. Robinson*, No. CV 18-14005, 2019 WL 6134190, at *4 (Roby, M.J.) (E.D. La. Nov. 19, 2019)). Therefore, Plaintiffs' assertions that they <u>may</u> find a discoverable document, without providing the Court a reason a document is <u>directly</u> relevant are of no import.

In this situation, given express Louisiana law on the matter, the Court questions the direct relevancy of any internal communications. Notwithstanding, given the District Judge's ruling on the motion to dismiss, this Court feels constrained to allow some discovery. The Court will not, however, permit an all-out fishing expedition. The requests lack temporal scope. While Plaintiffs want all documents and communications stemming from the conception and execution of the Loan through each and every Forbearance Agreement to show course of dealings, the Court finds this scope overbroad given the Fifth Circuit's opinion of Louisiana law on implied agreements, course of dealings, and borrowers' detrimental reliance claims. *See EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466, 469 (5th Cir. 2006) (finding statute Louisiana Credit Agreement Statute operates as a "statute of frauds" for the credit industry been held to reach actions based on implied agreements from a course of dealings or a "previous business relationship").

In narrowing the scope, the Court notes that the Third Amendment to the Forbearance Agreement was executed January 17, 2020. *See* R. Doc. 1, p. 4. This amendment and corresponding installment payment is the amendment alleged to have been not paid by Plaintiffs and in default. Moreover, on April 7, 2020, the Defendants sent correspondence to Plaintiffs notifying of the default

on the Third Amendment. The Court, therefore, finds the appropriate temporal period is January 17, 2020 to April 7, 2020.

Having established the relevant temporal period, the Court will proceed to review the discovery requests individually. There are ten (10) requests for production of documents and thirteen (13) Federal Rule 30(6)(6) document requests all of which are at issue.

### A. Requests for Production

The Court reviews first the Requests for Production. R. Doc. 78-2, p. 12.

The Court finds Requests Nos. 1, 2, 3 and 4 seeking records relating to FSA, Loan Sales Agreement, FPSM, and the Debt are relevant as constrained to the temporal period January 17, 2020 to April 7, 2020. As such, the Court will grant Requests for Production Nos. 1, 2, 3, and 4 as temporally limited.

Considering Request for Production No. 5, which seeks Defendants' emails, text messages, and voicemails, the Court finds only as to the emails are relevant as constrained to the temporal period January 17, 2020 to April 7, 2020. Plaintiffs, however, have failed to provide the Court a reason why the text messages and voicemails are relevant. As such, the Court will grant Request for Production No. 5 with respect to "intra-entity" emails as temporally limited; the request is denied with respect to text messages and voicemails.

Requests Nos. 6, 7, 8, 9 10, related to Defendants' employees, their records, their compensation, and termination. Specifically, Plaintiffs believe, without substantiation, that Mark Kilcoin, former employee of SBN V FNBC and Swiftships' representative, was terminated for wanting to help Plaintiffs. Plaintiffs have no proof of this beyond the fact that he left SBN V FNBC prior to the alleged default under what they consider suspicious circumstances. During the hearing, counsel for the Defendants stated on the record that Kilcoin left before March, and prior to the

8

alleged default and breach. Therefore, the Court finds Requests for Production Nos. 6, 7, 8, 9, and 10 are not relevant to any issue in the case and denies Plaintiffs' motion with respect to these requests.

### B. 30(b)(6) Document Requests

Next, the Court will review the 30(b)(6) Deposition Document Requests.[1] R. Doc. 78-2, p. 8.

The 30(b)(6) Document Requests Nos. 1, 2, 3, and 4 are the same as Request for Production Nos. 1, 2, 3, and 4. The Court's ruling as to these matters will, therefore, remain the same. As such, the Court will grant the 30(b)(6) Document Requests Nos. 1, 2, 3, and 4 as temporally limited to January 17, 2020 to April 7, 2020.

30(b)(6) Document Requests No. 5 seeks information and documents relating the Peter Laborde. The Plaintiffs contend that Laborde was an employee of a shipping competitor who wanted to look at Plaintiffs' boat. Plaintiffs contend this could show collusion and bad faith between Laborde and Defendants. Here, the Court notes this is not an *in rem* proceeding and the vessel has not been arrested. The only counterclaim made by the Defendants is for the full amount owed under the original contractual agreement. The Court, therefore, finds this request not relevant. As such, the Court denies Plaintiffs' motion with respect to 30(b)(6) Document Requests No. 5.

30(b)(6) Document Request No. 6 seeks information and document pertaining to Furlong, who Plaintiffs contend was the primary actor in the March 2020 conversation in which they claim a deal was negotiated pertaining to a Fourth Forbearance Agreement. The Court finds this request overbroad. In addition, the Court also believes that there is substantial overlap with Request No. 1, 2, 3, and 4. The Court, therefore denies Requests No. 6 as duplicative.

---

[1] The Court notes that it is reviewing a Notice of 30(b)(6) Deposition and appended "Document Requested" list, presumably there is a corresponding subpoena.

For the same reason of duplicity, the Court denies 30(b)(6) Document Requests Nos. 7 and 8. These requests that seek a March 16, 2020 email to Furlong (which should be in Plaintiffs' own possession) and documents related to the conference call in early March 2020 are subsumed in Request Nos. 1, 2, 3, and 4. As such, the Court denies 30(b)(6) Document Requests Nos. 7 and 8 as duplicative.

30(b)(6) Document Requests No. 9 seeks documents generated in connection to the April 3, 2020 email sent by Plaintiff Shah wondering whether an agreement had been reached to suspend payments during the Covid-19 Pandemic. Specifically, Plaintiffs want to know if there was any sort of corporate response to the April 3, 2020 email. If a responsive document exists, here the Court believes it should be tendered to Plaintiffs. As such, the Court grants Plaintiffs motion with respect to 30(b)(6) Document Requests No. 9.

30(b)(6) Document Requests No. 10 seeks documents relating to a statement made by Furlong that there is a "bigger amount being requested." Plaintiffs seem confused by this and suggest that Furlong was asking for some unknown number. As Defendants have stated, when Plaintiffs defaulted on the Forbearance agreement, under the contract Defendants had the right to not only seek the installment payment amount that was due March 30, 2020, but the full amount owed under the contract. The Court, therefore, finds this request is over broad. As such, the Court denies Plaintiffs' motion with respect to 30(b)(6) Document Requests No. 10.

Next, the Court reviews 30(b)(6) Document Request No. 11, which seeks documents relating to the Small Business Administration loan. Specifically, Plaintiff believe that Defendants acted in bad faith by refusing to release their collateral, which could affect their priority, in order for Plaintiffs to secure a loan to pay Defendants. The Court finds this request vague. As such, the Court denies Plaintiffs' motion with respect to 30(b)(6) Document Requests No. 11.

Finally, 30(b)(6) Document Requests Nos. 12 and 13 seek documents relating to the Notice of Default and Reservation as well as the Debt or agreements to suspend payments. These requests are subsumed in Requests Nos. 1, 2, 3, and 4. As such, the Court denies Plaintiffs' motion with respect to 30(b)(6) Document Requests Nos. 12 and 13 as duplicative.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion to Compel Discovery Responses (R. Doc. 78)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the motion is **GRANTED** with respect to Requests for Production and 30(b)(6) Document Requests Nos. 1, 2, 3, and 4 as temporally limited; Request for Production No. 5 with respect to intra-entity emails as temporally limited; and 30(b)(6) Document Requests No. 9.

**IT IS FURTHER ORDERED** that the motion is **DENIED** with respect to Request for Production No. 5 with respect to text messages and voicemails; Requests for Production Nos. 6, 7, 8, 9, and 10; and 30(b)(6) Document Requests Nos. 5, 6, 7, 8, 10, 11, 12, and 13.

**IT IS FURTHER ORDERED** that the Defendants shall have **fourteen (14) days** from the signing of this order to produce the documents in accordance with this Court's opinion.

New Orleans, Louisiana, this 15th day of April 2021.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

11